# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| CUPP CYBERSECURITY, LLC, a Delaware Limited Liability Company, and CUPP COMPUTING AS, a Norwegian Corporation,<br><br>Plaintiffs,<br>v.<br><br>SYMANTEC CORP., a Delaware Corporation,<br><br>Defendant. | Case No. 3:18-cv-01554-N |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE

# **TABLE OF CONTENTS**

                                                                                                                                         **Page**

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS ....................................................................................................1

    A. SYMANTEC'S DATA CENTERS IN THIS DISTRICT .........................................1

    B. SYMANTEC'S EMPLOYEES IN THIS DISTRICT ...............................................3

    C. SYMANTEC'S OFFICES IN THIS DISTRICT .......................................................4

III. ARGUMENT .........................................................................................................................5

    A. VENUE IS PROPER BASED ON SYMANTEC'S DATA CENTERS IN THIS DISTRICT .........................................................................................................5

        1. The Data Centers Are Physical Places. ..............................................................6

        2. The Data Centers Are Regular and Established Places of Business. .................8

        3. The Data Centers Are "Of the Defendant" Symantec. ......................................9

    B. VENUE IS PROPER BASED ON SYMANTEC'S EMPLOYEES IN THIS DISTRICT AND THE OFFICES THEY OCCUPY ................................................10

    C. ALTERNATIVELY, CUPP REQUESTS VENUE RELATED DISCOVERY. .........................................................................................................12

    D. ALTERNATIVELY, CUPP REQUESTS TRANSFER TO DELAWARE .............14

IV. CONCLUSION ....................................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT & T Intellectual Property I, LP v. Airbiquity Inc.*,
   No. 3:08-cv-1637-M, 2009 WL 774350 (N.D. Tex. Mar. 24, 2009)..............................14, 15

*In re Cordis Corp.*,
   769 F.2d 733 (Fed. Cir. 1985)..........................................................................5, 10, 12, 14

*In re Cray*,
   871 F.3d 1355 (Fed. Cir. 2017).............................................................................5, 6, 8, 9

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
   290 F. Supp. 3d 599 (N.D. Tex. 2017) ..........................................................................6, 9, 12

*Kranos IP Corp. v. Riddell, Inc.*,
   No. 2:17-cv-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ..........................11, 12

*Mallinckrodt IP v. B. Braun Med. Inc.*,
   No. 17-365-LPS, 2017 WL 6383610 (D. Del. Dec. 14, 2017) ..............................................12

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)................................................................................................................12

*Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*,
   No. 17-CV-1725 (JPO), 2018 WL 1478047 (S.D.N.Y. Mar. 26, 2018).............................7, 9

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
   No. 17-cv-04405-HSG, 2017 WL 6389674..........................................................................5

*Regenlab USA LLC, v. Estar Techs. Ltd.*,
   No. 16-CV-08771 (ALC), 2018 WL 3910823 (S.D.N.Y. Aug. 15, 2018) ...............10, 12, 14

*Seven Networks LLC v. Google LLC*,
   No. 2:17-cv-00442-JRG, 2018 WL 3634589 (E.D. Tex. Jul. 19, 2018)................5, 6, 7, 9, 10

*Shelton v. Schwartz*,
   131 F.2d 805 (7th Cir. 1942) ..................................................................................................8

*Tinnus Enters., LLC v. Telebrands Corp.*,
   No. 6:17-CV-00170-RWS, ECF No. 281 (E.D. Tex. May 1, 2018)......................................9

*UCB, Inc. v. Mylan Techs., Inc.*,
   No. 17-322-LPS, 2017 WL 5985559 (D. Del. Dec. 1, 2017) ...............................................13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................................................14

**Statutes**

28 U.S.C. § 1400 ...........................................................................................................................6

Plaintiffs CUPP Cybersecurity LLC and CUPP Computing AS (together "Plaintiffs" or "CUPP") jointly file this Response to Defendant Symantec Corp.'s ("Symantec" or "Defendant") Motion to Dismiss for Improper Venue (the "Motion").

## I.     INTRODUCTION

Symantec's motion to dismiss should be denied because Symantec has multiple physical locations in this District where it regularly conducts business. Based on publically available information, Symantec has (1) data centers located in this District, (2) employees in this District, and is seeking additional employees in the District, and (3) offices located in this District. Thus, all three prongs of the patent venue test are met because Symantec operates (1) physical places, (2) for conducting regular and established business, and (3) these places are Symantec's. Venue is proper here.

However, if the Court is not inclined to deny this Motion outright, CUPP requests leave to take limited venue-related discovery given Symantec's extensive operating history within this District. Alternatively, the case should be transferred to the District of Delaware.

## II.     STATEMENT OF FACTS

### A.     SYMANTEC'S DATA CENTERS IN THIS DISTRICT

Symantec maintains its "Global Cloud Data Centers" in eight cities across the United States, including in Dallas, Texas. App. 006-008, 009-014. These data centers provide Symantec's products to its customers and are strategically located to reduce latency and ensure adequate product performance. App. 017, 119. From the available public material, CUPP can establish that Symantec uses these data centers to conduct many aspects of its business, including furnishing and supporting its Web Security Service ("WSS") product. App. 020-23, 027-028. Symantec exercises complete control over these data centers. For example, "[a]ccess to data centers is limited to authorized personnel as well as being monitored, logged, and

tracked." App. 116 (also advertising "24x365 onsite security," "locked cabinet/cages with restricted access," alarm systems, and "motion-detection CCTV" for Symantec's data centers).

Symantec has at least two different data centers in this District to host its Web Security Service ("WSS") product, which provide this product to its customers in the geographic region that Symantec calls "North America: South." App. 035, 038. Symantec publishes a Registration and Admin Guide for its WSS product, updated July 18, 2018, that shows a data center in "Dallas, TX, USA" at IP address 199.116.171.164. App. 035. Symantec also publishes a Web Security Service Solutions WebGuide for its customers that lists at least ten additional IP Addresses for its data centers in "Dallas, TX, USA" that serve the geographic region "North America: South," through which its customers can access its WSS product. App. 040-041. Symantec maintains another website that continuously shows the real-time performance of its data centers in "Dallas, Texas" at https://trust.bluecoat.com.[1] App. 042-043. This website published an alert to Symantec's customers as recently as August 16, 2018, which read: "Symantec Web Security Service – Network Maintenance Notification" for its "Dallas (DA1)" data center. App. 044-045. Also, prior to the June 14, 2018 filing date of the Complaint in this action, on November 29, 2017, Symantec published a notice stating: "[C]ustomer connections to the Dallas data center may be experiencing increased latency." App. 046-047. Finally, Symantec publishes an article titled "Data center IP addresses for Web Security Services (WSS)," which was listed current as of June 22, 2018, and lists every WSS data center that Symantec maintains throughout the world in thirty-six cities, including Dallas. App. 020-024. This article shows there are two Symantec data centers in "Dallas, Texas"

---

[1]Symantec began offering the WSS product shortly after acquiring Blue Coat Systems, Inc. ("Blue Coat") in August 2016. App. 120-124 ("With the acquisition of Blue Coat complete, Symantec has begun executing its integration strategy").

codenamed "DA1" and "DFW2."  App. 023.  Notably, the acronyms that Symantec uses to describe its data centers in every other city all correspond to the name of that city or a major airport nearby.  *Id.* (showing Denver data centers named "DE1" and "DE3," Miami data centers named "MI1" and "MIA1," and Chicago data centers named "CH2" and "MDW1." (i.e., Chicago Midway Airport)).

A search of the IP addresses that Symantec publishes for its WSS product shows these IP addresses originate from either Irving, Texas or Dallas, Texas.  App. 050-055.  A search of the acronyms that Symantec publishes for its Dallas, Texas data centers shows that Blue Coat is listed as a service provider at the "DA1" data center for Equinix, a major data center host, whose "DA1" data center is in this District at 1950 Stemmons Freeway in Dallas, Texas.  App. 057-061, 068.  A search of the data center acronym DFW2 shows only two data centers in Texas under that acronym, one in Dallas, Texas and one in Richardson, Texas.  App. 069-071.  The data center in Richardson, Texas is located at 904 Quality Way (Dallas County).  App. 073.  Thus, both of these DFW2 data centers are within this District.  App. 069-071, 073.

**B.    SYMANTEC'S EMPLOYEES IN THIS DISTRICT**

Based on public information, Symantec employs many people in this District, including multiple high-level executives and sales personnel.  App. 083-092.  For example, the public LinkedIn profiles of Symantec's President and COO, Michael Fey, Chief Marketing Officer, Michael Williams, and Chief Strategy Officer, Brian Kenyon, shows they all work in the Dallas/Fort Worth Area.  *See below*; App. 083-092.  And Symantec employs sales managers and employees whose sales "territories" are targeted at this District.  App. 094.



Finally, Symantec regularly posts job listings for positions in this District. Below are just some of the positions Symantec is offering in this District in Dallas and also in the Eastern District in Plano.



*See* https://www.linkedin.com/jobs/symantec-jobs-dallas-tx.

C.       **SYMANTEC'S OFFICES IN THIS DISTRICT**

Symantec voluntarily inserted itself into this District as early as 2005 and has consistently maintained office space in this District. Dkt. No. 32; Symantec's Motion Appendix at Appx007. The physical address CUPP listed in its complaint was published on multiple sites on the Internet (*e.g.*, Whitepages, Manta, Foursquare, Superpages, Yelp, *etc.*) when the complaint was filed, and publicly available documents show that the office listed in CUPP's complaint is still owned and operated by Symantec. App. 095-098. While Symantec alleges that it no longer leases the specific office space identified in CUPP's complaint, publicly available documents support that Symantec still has long-standing connections to this District and continues to own or lease property and conduct business in this District. For

example, an August 2018 credit-reporting search for Symantec shows at least three other physical addresses for Symantec in this District. App. 099-107. These additional offices appear to be home offices or shared office space.

## III.   ARGUMENT

Venue is proper where the defendant has a (1) physical place in the district, (2) it is a regular and established place of business, and (3) it is the place of the defendant. *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).[2]

### A.   VENUE IS PROPER BASED ON SYMANTEC'S DATA CENTERS IN THIS DISTRICT

Venue is proper because Symantec maintains multiple regular and established places of business in this District, including multiple physical data centers that house servers and other equipment for Symantec to conduct its security business. *See Seven Networks LLC v. Google LLC*, No. 2:17-cv-00442-JRG, 2018 WL 3634589, at *2-3, *20-21 (E.D. Tex. Jul. 19, 2018) (holding venue was proper where Google maintained computer servers in the district to provide products to its customers). Symantec advertises those data centers to its customers as located in Dallas, Texas. These data centers were in operation in this District when CUPP filed its complaint on June 14, 2018, the critical date considered for establishing venue. Dkt. No. 1; *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 612 (N.D. Tex. 2017) ("The Court determines proper venue from the facts as they existed at time the Plaintiffs' Original Complaint was filed.").

---

[2]Symantec's Motion does not dispute that CUPP alleges acts of infringement in this District. *See, e.g.,* Dkt. No. 1, Complaint at ¶ 5. To the extent Symantec raises this issue on reply, allegations of infringement in the district "are sufficient for the purposes of section 1400(b)" and there is no required connection between the alleged acts of infringement and the regular and established place of business. *Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-cv-04405-HSG, 2017 WL 6389674, at *1-2 (citing *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)).

5

1.     **The Data Centers Are Physical Places.**

Symantec's data centers meet the first prong of the patent venue test because they are "physical places" and all available public documentation shows they were in this District on June 14, 2018. The Federal Circuit defined "place" as "[a] building or a part of a building set apart for any purpose." *In re Cray*, 871 F.3d at 1362 ("the first requirement is that there "must be a physical place in the district."). While the place need not be a "'fixed physical presence in the sense of a formal office or store,' there must still be a physical, geographical location in the district." *Galderma Labs.*, 290 F. Supp. 3d at 610. Here, Symantec's Global Cloud Data Centers and WSS data centers are both physical places with fixed, geographical locations that are in this District, and set apart for conducting the business of providing its internet security products to its customers in the southern United States. These locations have physical addresses in Dallas, Texas. App. 023, 028, 035, 038-073. Thus, they meet the first prong of the patent venue test.

Other courts have found that similar locations, including computer servers hosted in a data center, meet the "physical place" requirement under 28 U.S.C. § 1400. In *Seven Networks*, the court found that Google controlled servers in the district that were essential to conducting its business and hosting its products, and therefore the location where it housed those servers met the "physical space" prong even though Google rented that space from another company. 2018 WL 3634589, at *12-13 (holding the servers themselves and the location housing the servers, "both independently and together, meet the statutory requirement of a 'physical place'"). Similarly, in *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *3 (S.D.N.Y. Mar. 26, 2018) the court found a telecommunications box that sat on a rented shelf was a "physical place" under the patent venue test. Here, Symantec stores and operates its Global Cloud Services and its WSS product

6

on servers physically located in Dallas and Richardson, Texas to provide services to customers in this District and other locations in the southern United States.

That Symantec voluntarily hosted its physical data centers in Dallas, thereby inserting itself in this District, also supports a finding that they are physical places under the patent venue test. *Seven Networks*, 2018 WL 3634589, at *12 ("A defendant who does not establish or permit a physical presence within a district *of its own volition* may not be brought into a district pursuant to the venue statute by the acts of another.") (emphasis original). The location of its servers is important to Symantec's business because their strategic placement affects latency and the quality of the product it offers to different geographic regions. App. 017 ("Common causes [of WSS performance issues] are route latency, packet loss, peering point congestion"); App. 119 ("This ensures that key transactional data is only at rest in those specific geographic locations."). Symantec could have chosen many locations to host its data centers for the southern United States, and indeed it maintains data centers for other geographic regions in Chicago, Washington DC, and Toronto, for example. App. 006-008, 023, 035-039. But Symantec voluntarily choose to host data centers in this District and maintains multiple websites advertising its data centers in "Dallas, TX," including by updating its customers on the performance of those "(DA1 / DFW2)" data centers. Appx023, 028, 045, 047. Thus, Symantec's choice to maintain data centers in this District was a voluntary and strategic business decision. As such, Symantec's data centers are physical places with defined boundaries that meet the first prong of the patent venue test.[3]

---

[3] Further, Symantec cannot establish that these data centers are a mere "virtual spaces" and not an actual physical place. For example, *In re Cray* establishes that these types of data centers are not "virtual spaces" because they are physical "localit[ies], limited by boundaries," which the Federal Circuit held makes them a "physical place." *In re Cray*, 871 F.3d at 1362. These data centers are only in a few fixed geographic locations in the United States and Symantec

7

## 2. The Data Centers Are Regular and Established Places of Business.

Symantec's data centers meet the second prong of the patent venue test because they are regular and established places of business. A "place of business" under this prong is not restricted to any particular kind of business activity. *In re Cray*, 871 F.3d at 1362, 1364 n.1 ("we do not suggest that district courts must scrutinize the nature and activity of the alleged place of business to make relative value judgments on the different types of business activity conducted therein"); *Shelton v. Schwartz*, 131 F.2d 805, 809 (7th Cir. 1942) ("Emphasis must be on the existence of the regular and established place of business, not on the nature or character of the business conducted there."). Symantec provides internet security for its customers' online activities and information, and uses its data centers in Dallas, Texas to conduct its business. For example, the Global Cloud Data Center servers provide updates and support for Symantec's products. App. 109-110. The WSS servers provide a paid for service to Symantec's customers, which includes protecting customers from web threats. App. 020-026, 029-039. Additional evidence that Symantec conducts business with these data centers is that Symantec publishes multiple websites that help its customers connect to its Dallas data centers and provide real-time updates on their performance. App. 020-026, 040-047.

Here, Symantec's data centers are a core aspect of its business and they store, support, and even operate its WSS product regularly. These data centers are also strategically placed throughout the globe to reduce latency in providing security or distributing product updates. Thus, they meet the requirement of "a physical, geographical location in the district from which the business of the defendant is carried out." *In re Cray*, 871 F.3d at 1362; *Seven*

---

maintains only thirteen data centers for all of North and South America. App. 007, 011-012. CUPP does not argue that venue is proper in every location from where a customer accesses the data centers, thus "virtual spaces" does not apply.

*Networks*, 2018 WL 3634589, at *15 ("These servers actively service a distinct business need" and therefore, "they are places of business).

### 3. The Data Centers Are "Of the Defendant" Symantec.

Symantec's data centers meet the third prong of the patent venue test because they are places "of the Defendant." Symantec regularly publishes brochures and web guides informing its customers of the status of its "Dallas, TX" data centers and how they can connect to those data centers. These advertisements weigh heavily in favor of finding that the data centers are "of the Defendant," Symantec, or that it "holds out a place" for its business to its customers. *Galderma Labs.*, 290 F. Supp. 3d at 612 (holding a defendant's marketing and advertisements are relevant to whether it holds out a place for its business). Whether or not Symantec owns or leases the entire building, or merely rents server racks from a larger building, is immaterial as multiple courts have held that a place can be "of the Defendant" even if rented from within a larger business that is not its own. *Tinnus Enters., LLC v. Telebrands Corp.,* No. 6:17-CV-00170-RWS, ECF No. 281 at *3-5 (E.D. Tex. May 1, 2018) (shelf-space rented from, and displays set up inside, larger retail stores were sufficient to confer venue in that district on a company that sold "As Seen On TV" products in those stores) App. 125-132; *Peerless Network*, 2018 WL 1478047, at *3 (telecommunications equipment resting on a shelf rented by the defendant was sufficient to be considered "a place of the defendant."); *Seven Networks*, 2018 WL 3634589, at *20-21 (physical server racks on which Google's servers were installed were "a place of the Defendant," even though the larger rooms and buildings that housed the servers were not owned or leased by Google). Symantec also exercises complete control over its data centers. App. 115-119. Indeed, Symantec's internet security products would not be very effective if Symantec did not secure and control the actual data centers that provide and

operate those products.  And Symantec is likely to employ or contract with employees that manage these data centers.

Thus, because Symantec either owns, leases, or operates data centers and servers in this District, and advertises those locations to the public, Symantec satisfies the third prong of the patent venue test.  And because all three prongs are satisfied, venue is proper here.

### B.     VENUE IS PROPER BASED ON SYMANTEC'S EMPLOYEES IN THIS DISTRICT AND THE OFFICES THEY OCCUPY

A second, independent basis for concluding that venue is proper in this District is Symantec's large number of high-level executives and sales personnel employed in the Dallas/Fort Worth area.  These employees are likely to have home offices or other office space in this District paid for by Symantec.  App. 083-094.  Symantec is also likely to employ those working in its Dallas data centers.  Multiple courts have held that the actions of an employee may confer venue on the employer, especially where that employee works from a home office, keeps company literature at the home, receives support or reimbursement for a home office from the company, or focuses its sales activities within the district.  *In re Cordis*, 769 F.2d at 735 (finding venue was proper where the defendant stored inventory and literature in the homes of its employees working in the district, and retained a local secretarial service to support those employees); *Regenlab USA LLC, v. Estar Techs. Ltd.*, No. 16-CV-08771 (ALC), 2018 WL 3910823, at *14 (S.D.N.Y. Aug. 15, 2018) (finding venue sufficient where sales employees maintained home offices in the district and were assigned to a particular sales territory in the district); *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, at *16-17 (E.D. Tex. Aug. 28, 2017) (finding two sales representatives sufficient to confer venue when they were employed by defendant, held samples at their home offices, and made sales presentations and distributed promotional materials within the district, and

10

defendant was registered to do business in the state).  A simple LinkedIn search for Symantec in the Dallas/Fort Worth area returns 4,114 results.



*See* https://www.linkedin.com/search/results/people/?facetGeoRegion=%5B%22us%3A31%22%5D&keywords=symantec&origin=FACETED_SEARCH.

Based on these public searches, Symantec has a sizable employment force in the Dallas/Fort Worth area.  Symantec cannot credibly argue that none of its employees work in this District because it is very specific when it posts job listings.  As noted above, Symantec posts for certain jobs in Dallas, while posting for other jobs in Plano.  *See, supra,* https://www.linkedin.com/jobs/symantec-jobs-dallas-tx.  As public documents show that Symantec has multiple employees in Dallas, venue would be appropriate based on those employees.

11

In addition to the data centers and employees, Symantec had a listed office address in this District when CUPP filed this case – 15950 Dallas Pkwy, Dallas, TX 75248. App. 095-098. Symantec claims that it no longer is leasing that office space, as it has sold that part of its company. After receiving this information, credit reports were run on Symantec with Experian Commercial Credit Scores, and also a Business Report, in August 2018. These reports showed that Symantec has three additional offices located in this District. App.099-107. These office spaces appear to be home offices and shared office spaces. A Google Maps search for "Symantec Corporation" shows an address at 17250 Knoll Trail Dr, Dallas, TX 75248 – the address for the Courts of Bent Tree apartment complex in Dallas, Texas. App. 111-114. This activity also establishes Venue in this District. *In re Cordis*, 769 F.2d at 735; *Regenlab*, 2018 WL 3910823, at *14; *Kranos IP*, 2017, WL 3704762, at *16-17.

C.  **ALTERNATIVELY, CUPP REQUESTS VENUE RELATED DISCOVERY.**

Given Symantec's long history of voluntarily inserting itself in this District and its multiple physical locations and employees based in Dallas, at minimum CUPP should be allowed to take limited discovery on whether its choice of venue is appropriate. "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Courts routinely grant venue-related discovery due to the fact-specific nature of the analysis. *See, e.g.*, *Galderma Labs.*, 290 F. Supp. 3d at 605 (analyzing venue only after having permitted venue-related discovery and noting that the venue analysis is "particularly fact-specific"); *Mallinckrodt IP v. B. Braun Med. Inc.*, No. 17-365-LPS, 2017 WL 6383610, at *13 (D. Del. Dec. 14, 2017) (venue discovery is needed "to explore the business activities of [defendant]"); *UCB, Inc. v. Mylan Techs., Inc.*, No. 17-322-LPS, 2017 WL 5985559, at *2-3 (D. Del. Dec. 1, 2017) ("the Court should permit venue-related discovery, to allow the adversarial process to

aid the Court in making a fact-specific decision on a well-developed factual record."). As there is substantial public information showing that Symantec operates in this district, CUPP has a well-supported basis to seek discovery into Symantec's connections.

First, while Symantec alleges that it no longer operates the office listed in CUPP's complaint, this location is still listed as being a Symantec office in public documents. App. 095-098. The documentation Symantec provided to support its allegation that it does not have office space in this District consists only of screenshots of the directory of the office building, and not any legal documentation showing that Symantec no longer leases the space. *See* Dkt. No. 32, Symantec's Motion Appendix at Appx003 and Appx005. CUPP should be granted a reasonable opportunity to test Symantec's allegations that it no longer has any connection to this office, which should be supported in documentation in Symantec's possession.

There is also significant public information supporting that Symantec operates data centers located in this District. However, to the extent Symantec denies that it operates these data centers, attempts to minimize its activities related to these data centers, or argues that contrary to the publicly available information these data centers are not actually in this District, CUPP should be permitted discovery to establish the significance of any connections to these data centers and their physical location. Plaintiff expects that such discovery will lead to evidence that Symantec maintains many more physical locations in this District in addition to the five addresses mentioned above. App. 099-114. Similarly, many Symantec employees live and work in this District. App. 083-092; https://www.linkedin.com/search/results/people/?facetGeoRegion=%5B%22us%3A31%22%5D&keywords=symantec&origin=FACETED_SEARCH. Symantec also hires sales managers and other employees to sell its products directly to locations this District as their sales

13

"territory." App. 094. Plaintiff also expects that discovery will lead to information showing Symantec reimburses its employees for home offices, that its sales employees keep product literature at or conduct business out of their homes, and that they direct sales activities at locations within this District. That an apartment complex appears as a result for "Symantec Corporation" on Google Maps also supports that at least one employee has likely held out a home office as a place of business for Symantec. App. 111-114. All of these facts will help establish that venue is proper in this District. *See, e.g., In re Cordis*, 769 F.2d at 735; *Regenlab*, 2018 WL 3910823, at *14.

To the extent that the Court does not deny Symantec's motion outright, CUPP respectfully requests venue-related discovery before the Court rules on Symantec's motion. For example, CUPP seeks a single 30(b)(6) deposition on the topic of any physical locations, including data centers or home offices, that Symantec operates in this district, and limited document discovery into any contracts or invoices for Symantec's data centers, reimbursing its employees for a home office, or sales activities in this District.

### D.   ALTERNATIVELY, CUPP REQUESTS TRANSFER TO DELAWARE

Should the Court find venue improper in this District, CUPP requests transfer to the District of Delaware because two of the three parties on both sides are domiciled in Delaware, it will be more convenient for all involved, and it will better serve the interests of justice. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (noting the "deference given to a plaintiff's choice of venue"); *AT & T Intellectual Property I, LP v. Airbiquity Inc.*, No. 3:08-cv-1637-M, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (same, also noting the interests of justice and convenience of the parties as the standard for transfer). The Fifth Circuit lists several factors that a court should consider when determining whether to transfer an action,

including easy access to proof, the burden on potential witnesses, and "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.*

Here, both Symantec and CUPP Cybersecurity LLC are domiciled in Delaware. *See* Motion at 2. The other plaintiff, CUPP Computing As, is a Norwegian company. *Id.* Most of CUPP's employees and former employees (and potential witnesses in this case) live in Norway or Israel. CUPP has only a single employee in the Northern District of California. The majority of CUPP's documents and evidence is also stored in Norway and Israel. Symantec is a global corporation that maintains offices throughout the world. App. 006-014 (showing datacenters scattered all over the globe). Although Symantec claims its headquarters is in California, as shown above Symantec's President and COO, and many of its other chief officers, are located in Dallas. App. 083-092. Given these circumstances, transferring this action to Delaware is most convenient and better serves the interests of justice because Delaware sits halfway between CUPP's centers of operations in Norway and Israel, and Symantec's headquarters in California. The only convenience to be found by transferring this case to the Northern District of California would be Symantec's convenience, because CUPP would be forced to litigate in a forum even further from CUPP's European headquarters than Dallas is. Delaware, where both sides are domiciled, is equidistant. Symantec cannot meet its burden of showing that the Northern District of California is more convenient than this District or than Delaware – where Symantec resides. *Id.* ("The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."). Thus, if the Court does not simply deny this Motion or provide venue-related discovery, CUPP respectfully requests a transfer to the District of Delaware.

## IV. CONCLUSION

For the foregoing reasons, CUPP respectfully requests that the Court deny this Motion.

Respectfully submitted,

*s/ Mark C. Nelson*
Mark C. Nelson
Bar Number: 00794361
BARNES & THORNBURG LLP
2100 McKinney Ave., Suite 1250
Dallas, TX 75201
Email: mnelson@btlaw.com
Telephone: 214-258-4140
Fax: 214-258/4199

*Attorneys for Plaintiffs,*
CUPP Cybersecurity LLC and CUPP Computing AS

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
Kristopher Kastens
Austin Manes
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com
amanes@kramerlevin.com

Dated: August 27, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Fed. R. Civ. P. 5(b)(2)(E) on all parties who have consented to electronic service.

*s/ Mark C. Nelson*
Mark C. Nelson