PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRISTOPHER KASTENS (State Bar No. 254797)
kkastens@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800

*Attorneys for Plaintiffs*
CUPP CYBERSECURITY, LLC and
CUPP COMPUTING AS

STEFANI E. SHANBERG (State Bar No. 206717)
sshanberg@perkinscoie.com
NATHAN B. SABRI (State Bar No. 252216)
nsabri@perkinscoie.com
ROBIN L. BREWER (State Bar No. 253686)
rbrewer@perkinscoie.com
Perkins Coie LLP
505 Howard Street
San Francisco, California  94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

*Attorneys for Defendant*
GEN DIGITAL INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CUPP CYBERSECURITY, LLC, a Delaware Limited Liability Company, and CUPP COMPUTING AS, a Norwegian Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GEN DIGITAL INC. f/k/a NORTONLIFELOCK INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 3:19-cv-00298-WHO<br><br>**FURTHER CASE MANAGEMENT STATEMENT**<br><br>DATE:    November 28, 2023<br>TIME:    2:00 P.M.<br>PLACE:  Videoconference<br>JUDGE:  William H. Orrick |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, and this Court's Order Setting Case Management Conference on October 13, 2023, Plaintiff CUPP Cybersecurity, LLP and CUPP Computing AS (collectively, "CUPP") and Defendant Gen Digital Inc. ("Gen") submit this Further Case Management Statement.

**I.  Jurisdiction and Service:** This action arises under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq*. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). The Parties agree that personal jurisdiction is proper in this district. No Parties remain to be served.

**II.  Facts:** CUPP filed an infringement suit against Symantec Corporation in the Northern District of Texas Dallas Division on June 14, 2018, alleging infringement of U.S. Patent Nos. 8,365,272 (the "'272 Patent"), 8,631,488 (the "'488 Patent"), 8,789,202 (the "'202 Patent"), 9,106,683 (the "'683 Patent"), 9,747,444 (the "'444 Patent"), 9,756,079 (the "'079" Patent), 9,781,164 (the "'164 Patent"), and 9,843,595 (the "'595 Patent"). CUPP's initial complaint named Symantec Corporation as the defendant in this matter. Defendant has since changed its name to NortonLifeLock Inc. and then to Gen Digital, Inc. ("Gen").[1] For readability, Symantec Corporation and NortonLifeLock Inc., to the extent referred to in underlying documents, are referred to as "Gen" herein.

Gen moved to dismiss the case for improper venue on August 6, 2018. Dkt. No. 31. The Court granted the motion and transferred the case to the District of Delaware. Dkt. No. 44. Gen filed a motion for reconsideration to have the case transferred to the Northern District of California. Dkt. No. 45. The Court granted the motion for reconsideration on January 16, 2019, and transferred the case to the Northern District of California. Dkt. No. 53.

---

[1] On January 8, 2020, Defendant filed a Notice of Name Change stating that it had changed its name to NortonLifeLock Inc. (Dkt No. 93.) On October 12, 2023, Defendant filed a second Notice of Name Change stating that it had changed its name to Gen Digital Inc. (Dkt No. 110.)

CUPP subsequently filed a first amended complaint ("FAC") to add U.S. Patent No. 10,084,799 (the "'799 Patent") (collectively with previously asserted patents, the "Patents-in-Suit") to the case on February 13, 2019. Dkt. No. 64.

CUPP alleges in the FAC that Gen directly infringes, either literally or under the doctrine of equivalents, the Patents-in-Suit by making, using, importing, selling, and/or offering for sale a number of different products. Dkt. No. 64 at 7-23. CUPP further alleges in the FAC that Gen indirectly infringes the '488 Patent, the '202 Patent, the '683 Patent, the '595 Patent, the '164 Patent, the '444 Patent, the '272 Patent, and the '799 Patent. Dkt. No. 64 at 25-84. Specifically, CUPP alleges that Gen instructs and encourages its customers, purchasers, or developers to use the accused products. *Id*.

Gen filed an answer and asserted six affirmative defenses on February 27, 2019. Dkt. No. 66. CUPP moved to strike the fifth and sixth affirmative defenses on March 20, 2019. Dkt. No. 69. The Court denied CUPP's motion to strike after a hearing on April 24, 2019. Dkt. No. 79. On the same date, the Court held a case management conference and entered a partial case schedule, ending at claim construction. Dkt. No. 79.

CUPP served its Disclosure of Asserted Claims and Infringement Contentions and corresponding document production under Patent Local Rules 3-1 and 3-2 on July 15, 2019.

Gen served its Invalidity Contentions and corresponding document production under Patent Local Rules 3-3 and 3-4 on August 29, 2019.

After Trend Micro Inc. ("Trend Micro"), a defendant in another case, filed seven *Inter Partes* review ("IPRs") with the Patent Trial and Appeal Board ("PTAB") challenging validity of claims of seven of the Patents-in-Suit, the Parties stipulated to stay this case. Dkt. No. 92; *see also* Section X.

The Parties updated the Court on the IPR proceedings during the stay of the case. Dkt. Nos. 95, 96, 111. The Court lifted the stay on October 13, 2023, after the completion of the IPR proceedings. Dkt. No. 112. The status reports provide the results of the IPR proceedings and below.

**III.    Legal Issues:** The principal disputed legal issues are: (1) whether CUPP's forthcoming request to change venue should be granted; (2) the proper construction of the asserted claims of the Patents-in-Suit; (3) whether Gen directly and/or indirectly infringes any of the asserted claims the

Patents-in-Suit under 35 U.S.C. §§ 271 (a)-(b); (4) whether any asserted claim of the Patents-in-Suit is invalid, including under 35 U.S.C. §§ 101, 102, 103, and/or 112; (5) whether CUPP's claims of patent infringement are barred by the defenses alleged by Gen; (6) if liability is established, whether CUPP is entitled to any damages under 35 U.S.C. § 284, and if so, the amount of damages; (7) if liability and damages are established, whether such damages are limited by 35 U.S.C. §§ 286-288, and/or 28 U.S.C. § 1498, and if so, to what extent; (8) whether this case is exceptional under 35 U.S.C. § 285, entitling the prevailing party to attorneys' fees; and (8) whether CUPP is entitled to a permanent injunction under 35 U.S.C. § 283 or any other further or relief as the Court may deem proper and just.

**IV.     Motions:**  There are no pending motions.  CUPP intends to file a motion to transfer this case to the District of Delaware or the District of Arizona.  The Parties anticipate moving for summary judgment and may file other dispositive and non-dispositive motions as the case progresses.

**CUPP's statement regarding its further motion to transfer:** The company known as Symantec at the onset of this litigation has drastically changed since the case was stayed.  Broadcom acquired the company's enterprise portion, with the rest merging into the Gen in Tempe, Arizona.  Now, it is part of a conglomerate of multiple different security companies.  When this case was initially transferred out of the Northern District of Texas, CUPP stated that it preferred to be transferred to Delaware, where both companies are incorporated.  This is significantly more convenient since most CUPP's witnesses are in Europe.  However, as a compromise, CUPP is willing to transfer to Gen's headquarters in Tempe, which has a less crowded docket than in the Northern District of California.  Gen cannot argue that it is not convenient to move the venue of this case next to its headquarters. Notably, most party witnesses will be Gen's employees, who should not be burdened with traveling to its headquarters. Most non-party witnesses will have to travel from overseas regardless of the location of the District Court.  Finally, the case is still in its early stages, mainly because of the significant changes in at Gen.  CUPP understands that Gen is currently considering whether to agree to transfer the case to Delaware.

**Gen's statement regarding CUPP's further motion to transfer:**  Although Gen is no longer headquartered in the Northern District of California, this district remains far more relevant to this case

than the District of Arizona or the District of Delaware. While this CMC statement is not the place to brief the merits of CUPP's proposal in full, Gen has identified nearly 100 engineers on potentially relevant products located in California, compared to 11 located in Arizona and zero located in Delaware. All of its corporate officers—including its CEO, CFO, and General Counsel—are located in the Northern District of California. CUPP's principal place of business is also in the Northern District of California. CUPP already filed in an improper venue of its choice, necessitating six months of motion practice. *See, e.g.*, Dkts. 31 (Motion to Dismiss), 45 (Motion for Reconsideration), 53 (order finding improper venue). Another motion to transfer—whether attempting Delaware for a second time or requesting transfer to Arizona—over five years after the filing of the case and after the parties have already exchanged significant disclosures under this district's Patent Local Rules is wholly improper and a transparent attempt at repeated and belated forum shopping.

**V.     Amendment of Pleadings:** As discussed in Section II, CUPP amended its complaint on February 13, 2019. CUPP intends to seek to amend its pleadings to reflect alleged changes in structure to Gen since the case was stayed and to identify new products at issue since around the time the case was stayed. The Parties may seek leave of the Court to amend the pleadings in accordance with Fed. R. Civ. P. 15.

**VI.    Evidence Preservation:** The Parties have conferred pursuant to Rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The Parties confirm that each has taken appropriate steps to preserve documents, records, electronic data, and materials relevant to this lawsuit from modification or loss.

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The Court has granted the Parties' stipulated ESI order. Dkt. No. 90.

**VII.   Disclosures:** The parties exchanged initial disclosures on April 30, 2019. Gen served supplemental initial disclosures on July 29, 2019.

**VIII.  Discovery:** CUPP has served its Infringement Contentions and related document production under Patent Local Rules 3-1 and 3-2, and Gen has served its invalidity contentions and

related document production under Patent Local Rules 3-3 and 3-4.  The parties have also served their respective initial disclosures.  Neither party has served discovery requests.

The parties submitted a discovery plan with their initial Case Management Statement.  Dkt. 75.  The Parties resubmit that plan below and propose to wait to set a specific schedule until after the question of venue is resolved:

***Scope of Discovery.***  CUPP anticipates that the scope of discovery will encompass factual and legal issues identified in Sections II and III above and the requested relief discussed in Section XI below, including all related, ancillary, and subsidiary factual and legal issues.  These issues include, without limitation Gen's infringement of the Patents-in-Suit, the factual bases for Gen's asserted defenses, and the amount of damages and the extent of other relief to which CUPP is entitled.

Gen anticipates seeking discovery on the following issues: the factual bases for CUPP's claims and defenses; the proper constructions for the asserted claims of the asserted patents; the asserted patents, including, but not limited to prior art, invalidity analyses, unenforceability, conception, reduction to practice, prosecution history, assignment history, financial or ownership interests, and alleged infringement analysis; inventorship of the asserted patents and the named inventors; witnesses identified to testify on behalf of CUPP; any actual or potential licenses or assignment of ownership interests of the asserted patents, and the practices of the licensees that allegedly embody the asserted patents; Parties with a financial interest in the litigation, including litigation funders; CUPP's communications with third parties related to the asserted patents; the relationship between CUPP and Finjan, Inc. or related persons ("Finjan") and other facts in support of Gen's license and unclean hands defenses; and CUPP's allegations of damages and entitlement to an injunction.

***ESI.***  The Court granted the Parties' stipulated ESI order on June 6, 2019.  Dkt. 90.

***Privilege.***  The Parties will exchange privilege logs as set forth in Fed. R. Civ. P. 26(b)(5) on a date agreed upon by the Parties in advance of the close of fact discovery.  The Parties agree that information created on or after June 14, 2018 need not be logged.  The Court granted the Parties' Stipulated Protective Order on May 23, 2019.  Dkt. No. 88.

*Modifications to Discovery Limits.* To the extent not limited below, and unless otherwise agreed to by the Parties, the Parties agree to the limitations set forth in the Federal Rules of Civil Procedure and Local Rules of this Court. If a party requests discovery that exceeds any of the limitations set forth below or the applicable rules, the Parties agree to meet and confer in good faith to attempt to resolve the issue without Court intervention. If the Parties are unable to reach an agreement, a party may seek leave of Court for the additional discovery.

*Requests for Admission.* The Parties agree that each side may serve up to 100 requests for admission. Those related to the authentication of documents are exempt from this limitation.

*Depositions.* The Parties agree that individual fact depositions are limited to 7 hours of deposition time. While the 7 hour per witness limit does not apply to Rule 30(b)(6) witness, each deposition day will be limited to 7 hours. Individual and Rule 30(b)(6) depositions requiring an interpreter count as half-time against the deposition limit.

*Fact Depositions.* The Parties agree that the rules, procedures, and limits set forth in the Federal Rules of Civil Procedure and the Patent Local Rules should govern depositions. The presumptive ten depositions should be sufficient. Should either side, however, identify more than 8 party witnesses in its initial disclosures, then depositions shall be instead limited to 70 hours of deposition time for fact depositions, including individual and Rule 30 (b)(6) depositions of the other party as well as third-party depositions. Under an hours-based approach, each deposition will count as at least 4 hours of deposition time for a total of no more than 17 depositions. Expert depositions will not count towards these limits. If a party requires additional depositions, the Parties will meet and confer in good faith to attempt to resolve this issue before seeking the Court's intervention.

*Expert Depositions.* The Parties agree that, to the extent that an expert report is directed to more than one issue, such as infringement, invalidity, or damages, the Parties shall meet and confer to discuss what amount of time is necessary to cover the information in the report. If any expert submits a supplemental report, the Parties will meet and confer to discuss what additional deposition time, if any, is necessary to cover the information contained in the supplemental report. Nothing in the preceding sentence is intended to alter the requirements governing supplemental expert disclosures set forth in the

Federal Rules of Civil Procedure. The Parties shall meet and confer after service of expert reports to agree upon reasonable procedures and limitations for expert depositions, with the rebuttable presumption that an expert witness may be deposed for up to 7 hours for each report submitted by that expert.

*Protective Order.* The confidential information produced by the Parties in this action will be subject to the Stipulated Protective Order granted by this Court on May 23, 2019. Dkt. No. 88.

*Experts.* The Parties agree that the Federal Rules of Civil Procedure (*e.g.*, Rule 26(b)(4)) and the Local Rules of this Court govern discovery from experts in this case.

*Service.* The Parties agree that service via email constitutes service pursuant to Rule 5(b)(2)(E). Documents served on a party shall be emailed to all attorneys of record for that party.

**IX.     Class Actions:** This case is not a class action.

**X.     Related Cases:** CUPP filed a complaint against Trend Micro, Inc., Trend Micro, America, and Trend Micro Incorporated on May 15, 2018 in Northern District of Texas alleging infringement of the same eight patents (the '488, '202, '683, '595, '164, '444, '272, and '079 Patents) asserted in CUPP's original complaint against Gen. CUPP and Trend Micro have dismissed that case by stipulation after case settlement. *CUPP Cybersecurity LLC et al v. Trend Micro, Inc. et al.*, No. 3:18-cv-01251-M (N.D. Tex.), Dkt. No. 366.

All IPR proceedings for the Patents-in-Suit are complete with the following results:

| Patent | IPR Case No. | Claims Held Unpatentable | Claims Held Not Unpatentable | Claims not Challenged in IPR |
|---|---|---|---|---|
| '164 | 2019-368 | 1-7, 9-16, and 18 | | 8 and 17 |
| '272 | 2019-561 | 1 and 16 | 7 | 2-15 and 17-19 |
| '079 | 2019-641 | 1 and 7 | 6 | 2-5 and 8-12 |
| '488 | 2019-764 | 1–3, 5, 6, 9-12, 14, 15, and 18-20 | | 4, 7, 8, 13, 16, 17 |
| '595 | 2019-765 | 1, 9, 11, 13, 14, 16, 24, 26, 28, and 29 | | 2-8, 10, 12, 15, 17-23, 25, 27, 30 |
| '683 | 2019-767 | 1-3, 5, 6, 9-12, 14, 15, and 18-20 | | 4, 7, 8, 13, 16, 17 |
| '202 | 2019-803 | | 1, 3, 4, 6, 10, 11, 13, 14, 16, 20, and 21 | 2, 5, 7-9, 12, 15, 17-19 |

No other case involving the same parties or patents is pending before another judge of this Court, another Court, or an administrative body.

**XI.     Relief**

CUPP seeks entry of judgment finding that Gen directly infringes the Patents-in-Suit, and indirectly infringes the '488, '202, '683, '595, '164, '444, '272, and '079 Patents. Dkt. No. 64 at 84-85. CUPP also seeks injunctive relief and monetary damages in an amount no less than a reasonable royalty. *Id*. A non-binding, good-faith estimate of the damages expected in this case is between approximately $85-105 million.[2]  This preliminary estimate is based upon the benefits and advantages of CUPP's patented technology and other publicly information available, such as Gen's revenues, although CUPP does not have Gen's confidential information and other discovery that will further inform damages. CUPP further seeks a judgment that this case is exceptional and an award of CUPP's costs and reasonable attorneys' fees. CUPP also seeks an accounting of all sales and revenues, together with pre-judgment and post-judgment interest. CUPP seeks any other relief available under applicable law, including without limitation increased damages pursuant to 35 U.S.C. § 284.

As set forth in its Answer, Gen seeks judgment in favor of Gen and against CUPP on all claims asserted in the Amended Complaint. Gen is unable to provide an estimate of the damages range—should liability be proven—at this time. CUPP does not disclose the methodology used to arrive at its damages estimate. CUPP did not apportion damages to reflect the incremental value of the patented inventions. CUPP served Patent Local Rule 3-1 Infringement Contentions, but Gen expects that CUPP will amend its Infringement Contentions to account for new products. Gen requires both updated contentions for any new products that CUPP contends should be part of the case and discovery regarding the bases for CUPP's damages contentions before it is able to provide an estimate. Gen expects to be able to address damages when the Parties' respective Damages Contentions under Patent L.R. 3-8 and 3-9 are due, assuming CUPP's contentions are adequate.

---

[2] CUPP provides this estimate on the products that are currently part of the case as related to Symantec, and this does not include additional products of the other brands of Gen.

**XII.     Settlement and ADR:**  The Court approved the parties' stipulation selecting private ADR on May 16, 2019.  Dkt. No. 84.  The Parties have not discussed settlement.  The Parties expect that the Court's claim construction order will provide guidance that will assist the Parties in attempting to reach a resolution.

**XIII.    Other References:**  The Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel or Multidistrict Litigation.

**XIV.     Narrowing of Issues:**  The Parties believe that limiting the number of infringement and invalidity theories will facilitate the prompt and efficient resolution of this case.  CUPP served its Infringement Contentions and Gen served its Invalidity Contentions consistent with the limitations set in the parties' initial case management statement.  *See* Dkt. No. 75 § XV. The Parties agree that the selection of infringement and invalidity contentions will not preclude non-selected contentions following the final resolution of the initially selected contentions.  Put another way, the Parties will not be precluded by this agreement from raising different contentions in this or another proceeding.

**CUPP Statements on Narrowing Contentions:** CUPP contends that these should be permitted to be supplemented and amended based on the substantial changes in the structure of Gen and the results of the IPRs.  In the time since the stay was first instituted in 2019, the portfolio of accused products has changed drastically, both with Gen adding and revising the products it is offering and apparently divesting certain other accused products to Broadcom sometime in late 2019.

- CUPP shall serve its Infringement Contentions with no more than 36 claims across all the Patents-in-Suit and no more than 6 claims per patent.  In its Infringement Contentions, CUPP shall select no more than 80 contentions (*i.e.*, infringement allegation against an accused product or combination of products), with no more than 3 infringement contentions per any asserted claim.

- Gen Digital shall serve its Invalidity Contentions with no more than 40 prior art references total, and no more than 3 prior art invalidity contentions (*i.e.*, allegation of anticipation or obviousness in view of a combination of prior art references) per any asserted claim and no more than 80 contentions total.

- No later than 28 days before opening expert reports are due, CUPP shall serve an Election of Asserted Claims identifying the 24 claims, which is a subset of the claims from CUPP's Infringement Contentions, in which CUPP will not assert more than 5 claims per patent. At that time, CUPP will select no more than 40 contentions, with no more than 2 infringement contentions per any asserted claim.
- Not later than 7 days after service of CUPP's Election of Asserted Claims, Gen shall serve an Election of Asserted Prior Art identifying 27 references, which is a subset of Gen's Invalidity Contentions, in which Gen will not assert more than 2 invalidity contentions per asserted claim and 40 contentions total.

Gen will not be prejudiced by CUPP's proposed schedule. First, Gen would not be prejudiced by in its collection or prior art, as CUPP's proposed schedule allows Gen to serve new invalidity contentions. Second, besides original infringement contentions and invalidity contentions, there has been no discovery served or answered in the case, meaning that there is no waste of prior work. Finally, allowing CUPP to serve new infringement contentions allows to streamline the case, as it would otherwise likely required to file a new complaint to address patents that are already in the case, which would not be an efficient use of the Court's resources.

**Gen's Statement on Narrowing Contentions:**

As noted above, CUPP served its Infringement Contentions and Gen served its Invalidity Contentions consistent with the limitations set in the parties' initial case management statement. *See* Dkt. No. 75 § XV.

To this end, CUPP already served its Infringement Contentions with no more than 36 claims across all the Patents-in-Suit and no more than 6 claims per patent and selected no more than 80 contentions (*i.e.*, infringement allegation against an accused product or combination of products), with no more than 3 infringement contentions per any asserted claim. And Gen already served its Invalidity Contentions with no more than 40 prior art references total, and no more than 3 prior art invalidity contentions (*i.e.*, allegation of anticipation or obviousness in view of a combination of prior art references) per any asserted claim and no more than 80 contentions total.

Despite the time and resources the parties invested in drafting their contentions, CUPP would now like to restart the process because it chose to assert claims that were held unpatentable in IPR proceedings. CUPP cannot demonstrate good cause under Patent L.R. 3-6 to amend on this basis. When CUPP filed its infringement contentions, each of the IPRs it now seeks to escape had been filed and one had already been instituted. CUPP nevertheless proceeded to assert many claims that had been challenged in the IPRs. Presumably, CUPP selected what it viewed as its strongest claims despite the fact that they were being challenged in the IPRs. Permitting CUPP to substitute in weaker unchallenged claims is a waste of Court and party resources. Moreover, in reliance on CUPP's decision, Gen collected prior art and drafted invalidity contentions directed at CUPP's chosen claims. Permitting CUPP to assert new claims at this stage in the case would unduly prejudice Gen.

Although Gen opposes any amendment that would add new asserted claims, Gen recognizes that CUPP contends that it needs to amend its contentions to account for new products. Accordingly, Gen proposes that any amendments to the parties' already served contentions should be limited to updates to Infringement Contentions to account for new products, amendments to Invalidity Contentions responsive to those updates, and amendments otherwise permitted under Patent L.R. 3-6 upon a timely showing of good cause.

Aside from these amendments, the parties shall proceed under the remaining limitations to which the parties agreed in their initial case management statement:

- No later than 28 days before opening expert reports are due, CUPP shall serve an Election of Asserted Claims identifying the 24 claims, which is a subset of the claims from CUPP's Infringement Contentions, in which CUPP will not assert more than 5 claims per patent. At that time, CUPP will select no more than 40 contentions, with no more than 2 infringement contentions per any asserted claim.

- Not later than 7 days after service of CUPP's Election of Asserted Claims, Symantec shall serve an Election of Asserted Prior Art identifying 27 references, which is a subset of Symantec's Invalidity Contentions, in which Symantec will not assert more than 2 invalidity contentions per asserted claim and 40 contentions total.

*See* Dkt. No. 75 § XV.

**XV.** **Expedited Trial Procedure:** This case is not suitable for handling on an expedited basis with streamlined procedures.

**XVI.** **Scheduling:** As noted above, the parties would propose to submit a specific case schedule after the issue of transfer is resolved.

**XVII.** **Trial:** The Parties have requested a jury trial. The Parties anticipate that the trial will last 9 court days.

**XVIII.** **Disclosure of Non-party Interested Entities or Persons:**

Each party has filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

CUPP discloses that it has no parent corporation and that no publicly held corporation owns 10% or more of CUPP's stock. CUPP discloses that CUPP Cybersecurity, LLC is a wholly-owned subsidiary of CUPP Computing AS. CUPP certifies that no other persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the named Parties are known to have either: (i) a financial interest of any kind in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Gen restates that, pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Gen has no parent corporation and that no publicly held corporation owns 10% or more of Gen's stock. Pursuant to Civil Local Rule 3-15, Gen certifies that no persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the named parties are known to have either: (i) a financial interest of any kind in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**XIX.** **Professional Conduct:** All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XX.** **Other Issues:** The Parties consent to email service pursuant to Fed. R. Civ. P. 5(b)(2)(e).

**XXI.     Patent Local Rule 2-1(b):**  The Parties also met and conferred pursuant to Patent Local Rule 2-1(b).  The parties propose to submit a specific schedule, including any modification of Patent Local Rule deadlines and scheduling of claim construction discovery, after the issue of transfer is resolved.  The Parties agree that they will provide expert testimony, if any, in the form of a declaration that will be submitted with their claim construction briefs and will make their expert witnesses available for deposition at a mutually agreeable time after service of such disclosure.  The Parties anticipate that the claim construction hearing will take no more than a half day.  The Parties agree that the presentation of argument at the hearing should be in the manner and order that the Court prefers to address the issues.  The Parties propose providing the Court with a tutorial regarding the technology at issue prior to or at the claim construction hearing.  The Parties agree that the tutorial should be in the manner and order that the Court prefers.  A non-binding good faith estimate of damages is addressed above in Section XI (Relief).

|     |                              |                                                                 |
| --- | ---------------------------- | --------------------------------------------------------------- |
| 1   |                              | Respectfully submitted,                                         |
| 2   | DATED: November 21, 2023     | By:  /s/ Kristopher Kastens                                     |
|     |                              | Paul J. Andre (State Bar No. 196585)                            |
|     |                              | Lisa Kobialka (State Bar No. 191404)                            |
|     |                              | James Hannah (State Bar No. 237978)                             |
|     |                              | Kristopher Kastens (State Bar No. 254797)                       |
|     |                              | KRAMER LEVIN NAFTALIS & FRANKEL LLP                             |
|     |                              | 333 Twin Dolphin Drive, Suite 700                               |
|     |                              | Redwood Shores, CA 94065                                        |
|     |                              | Telephone: (650) 752-1700                                       |
|     |                              | Facsimile:  (650) 752-1800                                      |
|     |                              | pandre@kramerlevin.com                                          |
|     |                              | lkobialka@kramerlevin.com                                       |
|     |                              | jhannah@kramerlevin.com                                         |
|     |                              | kkastens@kramerlevin.com                                        |
|     |                              |                                                                 |
|     |                              | *Attorneys for Plaintiffs*                                      |
|     |                              | CUPP Cybersecurity, LLC and CUPP Computing AS                   |
|     | DATED: November 21, 2023     | By:  /s/ Nathan B. Sabri                                        |
|     |                              | Stefani E. Shanberg (State Bar No. 206717)                      |
|     |                              | Nathan B. Sabri (State Bar No. 252216)                          |
|     |                              | Robin L. Brewer (State Bar No. 253686)                          |
|     |                              | Perkins Coie LLP                                                |
|     |                              | 505 Howard Street                                               |
|     |                              | San Francisco, California  94105                                |
|     |                              | Telephone: (415) 344-7000                                       |
|     |                              | Facsimile: (415) 344-7050                                       |
|     |                              | sshanberg@perkinscoie.com                                       |
|     |                              | rbrewer@ perkinscoie.com                                        |
|     |                              |                                                                 |
|     |                              | *Attorneys for Defendant*                                       |
|     |                              | GEN DIGITAL INC.                                                |

**ATTESTATION**

I am the ECF user whose identification and password are being used in this filing.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that all signatories has concurred in the filing of this document.

DATED:  November 21, 2023                    */s/ Kristopher Kastens*
                                                                      Kristopher Kastens